# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| JILL A. KEHOE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Docket No. 2:16-cv-491-NT |
| | ) |
| THORNTON ACADEMY, | ) |
| | ) |
| Defendant. | ) |

## ORDER ON MOTION TO REMAND

Before me is the Plaintiff's motion to remand to state court her Amended Complaint asserting sex discrimination in violation of state law. At issue is whether the Plaintiff's single remaining claim presents a federal question because it requires me to interpret a collective bargaining agreement ("**CBA**") between the Trustees of Thornton Academy and the Thornton Academy Teachers Union. CBA (ECF No. 16-1). If the resolution of the state law claim depends upon the meaning of the CBA, then the claim is completely preempted by federal labor law. If the state law claim is independent of the CBA, then I must remand for lack of federal jurisdiction. For the reasons stated below, I **GRANT** the Plaintiff's motion to remand.

## PROCEDURAL HISTORY AND THE PARTIES' POSITIONS

The Plaintiff filed a two-count Complaint in the Maine Superior Court alleging sex discrimination in violation of the Maine Equal Pay Law, 26 M.R.S.A. § 628, and breach of the CBA. The Defendant Thornton Academy removed the complaint to this Court and filed a motion to dismiss. Notice of Removal (ECF No. 1); Def.'s Mot. to

Dismiss (ECF No. 7). The Defendant's notice of removal asserts that this Court has federal question jurisdiction over the claims alleged in the complaint under § 301 of the Labor Management Relations Act ("**LMRA**"), 29 U.S.C. §§ 141-87. Notice of Removal 2. In the motion to dismiss, the Defendant argues that the Plaintiff's claims are preempted by the LMRA and that an arbitrator's decision adverse to Ms. Kehoe is the final and binding resolution of her claims. Def.'s Mot. to Dismiss 5-9.

Approximately a week after the Motion to Dismiss was filed, the Plaintiff filed an Amended Complaint, in which she dropped her breach of contract claim and asserted only the sex discrimination claim under the Maine Equal Pay Law. Amended Compl. (ECF No. 8). Plaintiff then moved to remand her case to state court on the ground that her sex discrimination claim is not preempted by federal law because it is not dependent on an interpretation of the CBA. Pl.'s Mot. to Remand (ECF No. 10).

## DISCUSSION

### I. The Governing Law

Federal district courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "The gates of federal question jurisdiction are customarily patrolled by a steely-eyed sentry–the well-pleaded complaint rule . . . ." *BIW Deceived v. Local S6, Indus. Union of Marine & Shipbuilding Workers*, 132 F.3d 824, 830 (1st Cir. 1997) (citation omitted). Under that rule, "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar, Inc.*

*v. Williams*, 482 U.S. 386, 392 (1987). The plaintiff, as "master of the claim," can "avoid federal jurisdiction by exclusive reliance on state law." *Id*.

There is an "independent corollary to the well-pleaded complaint rule known as the complete pre-emption doctrine,"[1] and it has long been applied to § 301 of the LMRA. *Id*. at 393 (internal citation and quotations omitted). Section 301 provides that "[s]uits for violation of contracts between an employer and a labor organization representing employees . . . may be brought in any district court of the United States having jurisdiction of the parties" without regard to the amount in controversy or diversity. 29 U.S.C. § 185(a). The Supreme Court has determined that the "preemptive force of § 301 is so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization. Any such suit is purely a creature of federal law." *Franchise Tax Board of Cal. v. Constr. Laborers Vacation Trust for S. Cal.,* 463 U.S. 1, 23 (1983) (footnote and internal quotations omitted).

The Supreme Court has expanded the complete preemption doctrine beyond suits alleging just contract violations in order to prevent plaintiffs from evading the doctrine of complete preemption by artful pleading. *See Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 219-20 (1985). "If the resolution of a state-law claim *depends*

---

[1] "Complete preemption is distinct from ordinary, or defensive, preemption. It applies where a purported state claim . . . is re-characterized as a federal claim such that it is said to arise under federal law and permit removal to federal court." *Rueli v. Baystate Health, Inc*., 835 F.3d 53, 57 (1st Cir. 2016) (internal quotations and citations omitted). "Ordinarily federal pre-emption is raised as a defense to the allegations in a plaintiff's complaint," and since the well-pleaded complaint rule only focuses on the allegations in a complaint, the existence of a federal defense does not provide the basis for removal. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392-93 (1987).

*upon the meaning of a collective-bargaining agreement*, the application of state law . . . is preempted and federal labor-law principles . . . must be employed to resolve the dispute." *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 405-06 (1988) (emphasis added).

There are two ways that a Plaintiff's claim can "depend[] upon the meaning of a collective-bargaining agreement." *Id.* at 406. First, "a claim can allege the violation of a duty that arises from the CBA," and second, "a claim can require a court to interpret a specific provision of the CBA." *BIW Deceived*, 132 F.3d at 829. The Court of Appeals for the First Circuit has dubbed these two ways as the " 'duty' rubric" and the " 'interpretation' rubric." *Id.* at 830; *see also Rueli v. Baystate Health, Inc.*, 835 F.3d 53, 58 (1st Cir. 2016) ("claims must either be 'founded directly on rights created by collective-bargaining agreements' or 'substantially dependent on analysis of a collective-bargaining agreement' " (quoting *Caterpillar*, 482 U.S. at 394)). Here, the Defendant argues that the Plaintiff's sex discrimination claim requires the court to interpret two provisions of the CBA–Article II ("Teacher Employment") and Article X ("Salaries").

Under the interpretation rubric, I focus on "whether 'resolution' of a claim 'arguably hinges upon an interpretation of the collective bargaining agreement.' " *Rueli*, 835 F.3d at 58 (quoting *Flibotte v. Penn. Truck Lines, Inc.*, 131 F.3d 21, 26 (1st Cir. 1997)). In *Rueli* the First Circuit explained that the qualifier "arguably" is necessary because at the outset of a case when defendants remove to federal court, "we cannot know the exact contours of the wage dispute and the precise CBA terms

4

likely to require interpretation cannot be certain." *Id.* at 58-59 (quoting *Cavallaro v. UMass Mem'l Healthcare, Inc.*, 678 F.3d 1, 8 (1st Cir. 2012)). The emphasis under the interpretation prong is on "the legal character of a claim," not its underlying facts. *Livadas v. Bradshaw,* 512 U.S. 107, 123 (1994).

"Though section 301 is omnipotent within its sphere, it is not endlessly expansive." *BIW Deceived*, 132 F.3d at 830. It does not preempt "nonnegotiable rights conferred on individual employees as a matter of state law," *Livadas*, 512 U.S. at 123, and "purely factual questions about an employee's conduct or an employer's conduct and motives do not require a court to interpret any term of a collective-bargaining agreement," *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 261 (1994) (quoting *Lingle*, 486 U.S. at 407); *see also BIW Deceived,* 132 F.3d at 830.

In *Lingle*, the Supreme Court found that a plaintiff's state claim for retaliatory discharge was not preempted even though it was based on the same facts as the plaintiff's grievance filed under the collective bargaining agreement's dispute resolution provisions for improper discharge. As the Court explained:

> even if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is "independent" of the agreement for § 301 preemption purposes.

*Lingle,* 486 U.S. at 409-10.

## II. Application of the Law to the Facts

With these principles in mind, I consider whether the Plaintiff's claim under the Maine Equal Pay Law depends on an interpretation of the CBA. On its face, the Plaintiff's Amended Complaint sounds only in Maine law. To make out a claim under

5

the Maine Equal Pay Law, the Plaintiff will have to show that she was paid less than male employees doing "comparable work on jobs that have comparable requirements relating to skill, effort and responsibility." 26 M.R.S.A. § 628. The Plaintiff's theory of the case is that valuable benefits and extra (compensable) duties not covered by the CBA were discriminatorily offered to male employees and were not offered to her. Pl.'s Mot. to Remand 5.

The Defendant contends that all aspects of the Plaintiff's pay – from her pay rate to promotions, increases, and stipends – are governed by the terms and conditions of the CBA. Def.'s Resp. to Mot. to Remand 3. The Defendant argues that the Plaintiff's claim hinges on interpretation of Article II ("Teacher Employment")[2] and Article X ("Salaries")[3] of the CBA. The Plaintiff responds that it will not be necessary to refer to the CBA to establish her claim, but acknowledges that it may be necessary to consult the CBA for purposes of determining damages. Reply in Support of Mot. to Remand 2-3 (ECF No. 18).

---

[2] The Defendant identifies the pertinent portion of Article II as the following:

TEACHER EMPLOYMENT

    A. 1. Each teacher shall be placed on his/her proper step of the salary schedule in accordance with paragraph 2 below and no professional personnel will be hired off scale.

    2. Full credit on the Teacher Salary Schedule shall be given for previous full-time outside teaching experience upon initial employment in accordance with the provisions of Schedule A. For purposes of this section, a year of teaching experience shall mean at least one hundred thirty-five (135) days of teaching in a given school year.

CBA 4.

[3] Article X contains Salary Scales (Schedule A) that list steps on a vertical axis and educational accomplishments (*e.g.*, BA, BA + 15, MA, etc.) on the horizontal access. CBA 27-31. The resulting charts set forth the salaries to be paid commensurate with the step and educational background each person has. Article X also contains lists of the "Extra-Curricular Stipends" offered to employees who serve as advisors, coaches, or coordinators of various sports teams or other activities. CBA 33-38.

It may well be necessary for the Plaintiff to establish pay rates of male counterparts and to factor out seniority differentials in order to make her case. But the Supreme Court has drawn a distinction between a claim that involves interpretation of the terms of a CBA and one that involves mere reference to those terms, with only the former requiring complete preemption under § 301 of the LMRA. "The mere need to 'look to' the collective-bargaining agreement for damages computation is no reason to hold the state-law claim defeated by § 301." *Livadas,* 512 U.S. at 125 (quoting *Lingle*, 486 U.S. at 413 n.12); *see also Lueck*, 471 U.S. at 211. The Defendant does not identify any term used in the CBA that is in dispute or that requires interpretation. Under these circumstances, the limited reference to the CBA is not sufficient to remove a state law claim on the ground that it is completely preempted by § 301 of the LMRA.

The essence of the Plaintiff's claim is that Thornton Academy discriminated against her based on her gender in violation of a Maine anti-discrimination statute. The claim is not dependent on any provision of the CBA for its resolution. The *Lingle* case is instructive. In *Lingle*, the plaintiff grieved her discharge as being improper under a provision of her collective bargaining agreement that protected employees from discharge without "just cause." 486 U.S. at 401-02. *Lingle* also filed a separate state suit alleging retaliatory discharge that the defendant removed to federal court. *Id.* at 402. The Supreme Court held that the retaliatory discharge claim was independent of the collective bargaining agreement because "resolution of the state-law claim does not require construing the collective bargaining agreement." *Id.* at

7

407. In an important bit of dicta, the Supreme Court acknowledged that the Seventh Circuit had correctly understood that "'*§ 301 does not pre-empt state anti-discrimination laws, even though a suit under these laws, like a suit alleging retaliatory discharge, requires a state court to determine whether just cause existed to justify the discharge.*' " *Id.* at 412 (quoting *Lingle v. Norge Div. of Magic Chef, Inc.*, 823 F.2d 1031, 1046, n.17 (7th Cir. 1987) (emphasis added)); *see also Cullen v. Henry Haywood Mem'l Hosp.*, 95 F. Supp. 3d 130, 137 (D. Mass. 2015) (holding that state employment discrimination claims not dependent on interpretation of collective bargaining agreement are not preempted under LMRA); *LaRosa v. United Parcel Serv., Inc.*, 23 F. Supp. 2d 136, 144 (D. Mass. 1998) (same).

Because the legal character of the Plaintiff's claim under the Maine Equal Pay Law is not contractual but rather depends on an anti-discrimination theory, I reject the Defendant's charge that the Plaintiff is artfully pleading her case to avoid preemption. The state claim at issue does not require the court to interpret the CBA, and, thus, there is no federal question jurisdiction.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** the Plaintiff's motion to remand.

SO ORDERED.

/s/ Nancy Torresen
United States Chief District Judge

Dated this 25th day of January, 2017.

8